UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARQUIN LAMAR PHELPS,

          Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

_____

**DECISION AND ORDER**

13-cv-6022 EAW

## I.    INTRODUCTION

Represented by counsel, Plaintiff Darquin L. Phelps ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner")[1], denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.  (Dkt. 1). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 7 & 9). Because this Court finds that the decision of the Commissioner is supported by substantial evidence and is in accordance with applicable law, the Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion is denied.

---

[1]    Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  As such, the Court hereby amends the caption of the case *sua sponte* to reflect that Ms. Colvin is the Defendant.

- 1 -

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     Overview

On June 17, 2009, an application for SSI was protectively filed on behalf of Plaintiff, who was then a child under the age of 18.   (Administrative Transcript (hereinafter "Tr.") at 152-54).   In his application, Plaintiff alleged disability due to hearing loss in his left ear, with a disability onset date of August 1, 2003. (Tr. 152, 189). On December 1, 2009, the Commissioner denied Plaintiff's application.   (Tr. 80). Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). On May 10, 2011, Plaintiff, represented by counsel, and his mother, Cassandra Lenore Matthews ("Ms. Matthews"), appeared and testified at a video hearing before ALJ Jennifer Whang. (Tr. 53-79). Vocational Expert ("VE") Arthur M. Brown also appeared and testified. (*Id.*).

On May 23, 2011, ALJ Whang issued a decision finding that Plaintiff was not disabled. (Tr. 85-99). On October 3, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 7-9).   Plaintiff commenced this civil action appealing the final decision of the Commissioner on January 15, 2013. (Dkt. 1).

### B.     The Non-Medical Evidence

#### 1.     Testimony of Plaintiff

At the May 10, 2011 hearing, Plaintiff testified that he was 18 years old and he was in eleventh grade regular education classes, but he did receive after-school help. (Tr. 72). Plaintiff stated that he had trouble hearing with his left ear, but his hearing was

good in his right ear. (*Id.*). Plaintiff testified that he enjoyed listening to music and had friends in the neighborhood. (Tr. 74). However, Plaintiff said he did not have friends in school because they had graduated. (Tr. 73). He had a driver's license and planned to go to trade school after graduation. (Tr. 74). According to Plaintiff, he had worked as a landscaper and cleaner the summer before the hearing, and also held a volunteer position supervising children at the local recreation center. (Tr. 72-73). Plaintiff testified that he left those positions when the school year started again. (Tr. 73).

### 2.   Testimony of Ms. Matthews

Plaintiff's mother, Ms. Matthews, testified that Plaintiff lived with her and two of his siblings. (Tr. 60-61). According to Ms. Matthews, Plaintiff's multiple ear infections as a child caused hearing difficulties that caused Plaintiff to use a FM system for hearing amplification beginning when he was an elementary student and continuing until he was in ninth grade. (Tr. 62-64). Ms. Matthews said the school stopped providing the systems after Plaintiff destroyed three or four of them. (Tr. 67).

Ms. Matthews testified that Plaintiff has "a lot of behavioral issues" and was "constantly suspended." (Tr. 64). Ms. Matthews also testified that Plaintiff experienced anxiety and fits of "destructiveness" at home and at school. (*Id.*). Ms. Matthews stated that Plaintiff has received counseling for anger management. (Tr. 65). She acknowledged that Plaintiff performed volunteer work over the summer that went well, but said that Plaintiff sometimes had trouble finishing tasks that he had started. (*Id.*). She also testified that Attention Deficit Hyperactivity Disorder ("ADHD") ran in Plaintiff's family, and that Plaintiff had previously attended counseling and anger

management classes, but stopped attending because Plaintiff's father was not consistently taking him to appointments. (Tr. 66-68).

### 3.    Testimony of the Vocational Expert

VE Brown testified that a hypothetical individual with Plaintiff's age, education, and experience who has no exertional limitations should avoid concentrated exposure to noise and would be limited to jobs that do not require fine hearing capacity. (Tr. 77). The VE further noted that a person with these limitations would be able to perform jobs that exist in the national economy, including industrial cleaner, production laborer, and sorter. (Tr. 77-78). According to VE Brown, these positions require light to medium levels of exertion. (Tr. 78).

### C.    Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

On October 6, 1997, licensed audiologist Patricia Wissman tested Plaintiff's hearing capabilities. (Tr. 242). Testing indicated "moderately severe hearing loss in the high frequencies" in Plaintiff's left ear. (*Id.*). Ms. Wissman recommended "preferential classroom seating in close proximity to the teacher/speaker and in clear view of all available visual cues." (*Id.*).

Licensed audiologist Robin Parsons evaluated Plaintiff on March 24, 2004. Testing indicated poor word recognition in the left ear at "slightly elevated speaking levels." (Tr. 244). Ms. Parsons found "[w]ith hearing loss of this degree and nature [Plaintiff] can be expected to have difficulty hearing in some listening situations,

- 4 -

especially in the presence of competing background noise." (*Id.*). Additionally, she found Plaintiff will "have difficulty localizing the sound source." (*Id.*).

One June 14, 2006, treatment note from Westside Health Services indicated that Plaintiff may have Attention Deficit Disorder ("ADD"), and set a plan to refer Plaintiff to a psychologist to discuss a Ritalin prescription. (Tr. 256).

A May 17, 2007, treatment note from Westside Health Services showed that Plaintiff was assessed as a healthy 14-year old. (Tr. 258). Evaluations showed normal hearing in the right ear and mild hearing loss in the left ear. (Tr. 257).

On July 29, 2009, Ms. Wissman noted Plaintiff's academic reports were "generally unfavorable in terms of grades and behavior," and that Plaintiff's father stated Plaintiff would be getting a medical evaluation for his "fidgety behavior." (Tr. 234). Testing showed "moderately severe hearing loss levels across high frequencies of the left ear." (*Id.*). Plaintiff's "ability to hear single-syllable words clearly at a comfortable listening level" was found to be "poor to good." (*Id.*). Ms. Wissman opined that Plaintiff "can be expected to have difficulty hearing in certain listening situations." (*Id.*). She recommended that Plaintiff have preferential classroom seating and that his teachers provide visual cues such as gestures and the use of pictures. (Tr. 235).

Speech and language pathologist Miriah Brunetto examined Plaintiff on October 14, 2009. (Tr. 217). Testing revealed "moderate to severe receptive and expressive language delay." (Tr. 218). Plaintiff showed delays in several areas of language skills. (Tr. 217). Ms. Brunetto said that these impairments "may adversely affect [Plaintiff's] academic performance, social functioning, life experiences, communication at an age

appropriate level, production of speech at an acceptable rate, and ability to follow directions and instructions." (Tr. 218). However, Ms. Brunetto opined the prognosis was good with appropriate intervention. (*Id.*). Ms. Brunetto described Plaintiff as cooperative and friendly, and noted that he provided thoughtful responses during formal testing. (Tr. 217). Ms. Brunetto also indicated that Plaintiff's attention and concentration were appropriate to the tasks. (*Id.*).

On November 24, 2009, J. Weir, a consultative speech and language pathologist, found that Plaintiff had a marked impairment in acquiring and using information; no limitation in attending and completing tasks; a less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in caring for himself; and a less than marked limitation in health and physical well-being. (Tr. 229-31).

On December 1, 2009, R. Gauthier, a medical internist consultant, found that Plaintiff had a marked limitation in acquiring and using information and a less than marked limitation in interacting and relating with others and/or health and physical well-being. (Tr. 228-31).

On October 4, 2010, licensed audiologist Sheryl Reid evaluated Plaintiff's hearing loss. (Tr. 195). Testing showed a "relatively unchanged mild to moderately severe loss in the left ear." (*Id.*). Word recognition was "fair in [Plaintiff's] better right ear and poor in the left ear." (*Id.*). Ms. Reid stated that "[w]ith hearing loss of this degree and nature, [Plaintiff] can 'hear' but will have difficulty understanding in certain situations, such as hearing faint or distant speech" and will have difficulty localizing sounds and voices.

(*Id.*).  Ms. Reid recommended that Plaintiff secure seating close to the teacher and use hearing protection whenever noise exposure might occur.  (*Id.*).

**D.**   **Determining Disability Under the Social Security Act and the ALJ's Decision**

**1.**   **Standard for Child SSI Benefits**

"Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Hart v. Colvin*, No. 12-CV-1043-JTC, 2014 WL 916747, at *3 (W.D.N.Y. Mar. 10, 2014) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)).   In considering a child's application for Social Security Disability benefits, the Commissioner uses a three-step evaluation process to determine whether a child is disabled.   20 C.F.R. §§ 416.924(a)-(d).   First, the ALJ determines whether the child is engaged in any substantial gainful activity.  20 C.F.R. § 416.924(b).  Second, if the child is not engaged in any substantial gainful activity, the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than a minimal functional limitation."  20 C.F.R. § 416.924(c).  Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").   If the child's impairment(s) medically meets or equals a listed impairment, the child will be found disabled.  20 C.F.R. § 416.926(d)(1).

If a child's impairment(s) does not meet or equal a listed impairment, the ALJ will assess all functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The ALJ considers how a child functions in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A child is classified as disabled if the child's impairment(s) result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(a), (d). "A 'marked' limitation exists when the impairment 'interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Hart*, 2014 WL 916747, at *3 (citing 20 C.F.R. § 416.926a(e)(2)(i)) (alteration in original). "An 'extreme' limitation is an impairment which 'interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)) (alteration in original).

In the instant case, in applying the three-step evaluation process, the ALJ made the following determinations. At the first step, the ALJ determined that Plaintiff was a minor at the time the application was filed and that he had not engaged in substantial gainful activity since the application date. (Tr. 89-90). At the second step, the ALJ found that Plaintiff suffered from the severe impairments of hearing loss in the left ear and speech and language delay. (Tr. 90). At the third step, the ALJ determined that these impairments did not meet or functionally equal the listings of impairments. (*Id.*).

The ALJ then assessed the functional limitations caused by Plaintiff's impairments and determined that, before turning 18, Phelps had a marked limitation in the domain of acquiring and using information; no limitation in attending and completing tasks; a less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and a less than marked limitation in health and physical well-being.  (Tr. 90-96).  As a result of these findings, the ALJ determined that Plaintiff was not disabled.

## 2.    Standard for Adult SSI Benefits

The Social Security Act provides that a claimant applying for SSI will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin*, No. 13-CV-638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014).  A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act.  *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).  The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.    If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

In applying the five-step sequential analysis, the ALJ made the following determinations. At the first step, the ALJ found that Plaintiff was not currently engaged in substantial gainful activity. (Tr. 89). At the second step, the ALJ found that Plaintiff had not developed any new severe impairment. (Tr. 99). At the third step, the ALJ reiterated that Plaintiff did not have a listed impairment that would render him disabled. (Tr. 97). At the fourth step, the ALJ determined that, since turning 18, Plaintiff had the

residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: claimant must avoid all concentrated exposure to extreme noise; and he is limited to jobs that do not require fine hearing capability." (Tr. 97).  Because Plaintiff had no past relevant work, the ALJ moved on to step five. (Tr. 98).  At the fifth step, considering Plaintiff's RFC, age, education, and work experience, as well as the testimony of the VE, the ALJ further found that, as an adult, "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 99).  The ALJ adopted the VE's opinion testimony that Plaintiff was able to perform jobs that exist in the national economy, including industrial cleaner, production laborer, and sorter. (*Id.*).  Based on these findings, the ALJ concluded that Plaintiff was not disabled. (*Id.*).

## III.   DISCUSSION

### A.   Standard of Review

This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3).  "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). Title 42 U.S.C. section 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record.  Substantial evidence is "more than a mere scintilla," and "relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating Plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (stating that a reviewing Court does not examine a benefits case *de novo*).  If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

### B.    The ALJ fully developed the record.

"Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the

administrative record." *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *7 (W.D.N.Y. July 2, 2012) (internal quotations omitted). This duty to develop the record exists even when the claimant is represented by counsel. *Perez*, 77 F.3d at 47. Where there is reason to believe that additional information is necessary to reach a decision, the ALJ is required to develop a complete medical history of the claimant for at least a twelve month period prior to the application date. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

Plaintiff contends the ALJ failed to develop the record because she did not order a psychiatric consultative examination in light of Ms. Matthew's testimony that Plaintiff may have ADD or ADHD, (Tr. 66-68), as well as a treatment note dated June 14, 2006, which indicated that Plaintiff may have ADD and set a plan to refer Plaintiff to a psychologist to discuss a Ritalin prescription (Tr. 256). (Dkt. 8 at 8).

The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record. 20 C.F.R. § 404.1519a(b)(4); *see Simon v. Colvin*, No. 6:12-CV-6381 MAT, 2013 WL 4094612, at *6-7 (W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative evaluation needed where substantial evidence in the record to support ALJ's conclusion); *Battaglia v. Astrue*, No. 11 Civ. 02045, 2012 WL 1940851, at *10 (E.D.N.Y. May 29, 2012) (determining no psychiatric consultative examination necessary where claimant voluntarily discontinued psychiatric treatment and subsequent treatment notes indicated claimant appeared well). "An ALJ is not obligated to order a consultative examination if

the facts do not warrant or suggest the need for such an examination." *Brown v. Astrue*, No. 11-CV-6329T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012). On the other hand, it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision. *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000).

In this case, a consultative examination was not necessary for the ALJ to reach a decision. Plaintiff's alleged treatment for ADD was only cited once in a treatment note dated June 14, 2006. (Tr. 256). The note recommends that Plaintiff follow up with a psychologist, but there is no evidence in the record to suggest that Plaintiff received any treatment for ADD during the remaining relevant application period. Although there are references to Plaintiff's disruptive behavior (*see* Tr. 64-65; 91; 94; 215; 256), there are no records after a single note in 2006 to indicate that Plaintiff was diagnosed with ADD or receiving treatment for the condition. Plaintiff contends that Ms. Matthews' comments that Plaintiff may have ADHD within the relevant time period created an ambiguity sufficient to require a psychiatric consultative examination. However, "[a] parent's testimony alone is not enough to establish a physical or mental impairment." *Agee ex rel. M.P.W. v. Astrue*, No. 12-cv-0657, 2013 WL 6384595, *11 (W.D.N.Y. Dec. 6, 2013) (citing 20 C.F.R. § 416.928(a)).

In fact, there is substantial evidence in the record to demonstrate that Plaintiff was functioning well. During medical examinations, Plaintiff had a positive affect and provided thoughtful responses to conversation. (Tr. 215-19). Ms. Brunetto opined that Plaintiff had a good prognosis, despite a moderate to severe expressive language delay.

(Tr. 91, 215-19).  Plaintiff was in regular education classes.  (Tr. 215).  Plaintiff testified

that he enjoyed listening to music, was able to drive, and enjoyed spending time with

friends in the neighborhood.  (Tr. 73-74).  Plaintiff was able to perform two summer jobs

and do volunteer work.  (Tr. 63, 73).  Further, treatment notes in the record from May 17,

2007, and July 15, 2008, assessed Plaintiff as healthy with "normal growth and

development."  (Tr. 258, 260).  Additionally, the Court notes that Plaintiff did not allege

ADD or ADHD as a source of disability in his application for SSI, nor did Plaintiff testify

to these conditions at the hearing.  (*See* Tr. 72-74, 188, 168).

Absent any additional medical evidence to demonstrate that Plaintiff was

undergoing treatment for an attention deficit condition, and in light of the medical

evidence supporting the ALJ's determination, the Court concludes that the ALJ fully

developed the record and was not required to order a consultative psychiatric

examination.

C.   **The ALJ conducted a credibility analysis as to Plaintiff's and Ms. Matthews' testimonies that was supported by substantial evidence.**

Plaintiff contends the ALJ erred by failing to make proper credibility findings as

to both Plaintiff's testimony and Ms. Matthews' testimony. (Dkt. 8 at 9).

1.   **The ALJ's credibility analysis as to Plaintiff's testimony is supported by substantial evidence.**

The Social Security regulations require a two-step process for the ALJ to consider

the extent to which subjective evidence of symptoms can reasonably be accepted as

consistent with the medical and other objective evidence.  *Brownell v. Astrue*, No. 05-

CV-0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009).  First, the

ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the following factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§404.1529(c)(3)(i)-(vii).

Here, in considering Plaintiff's credibility, the ALJ properly applied the two step analysis. First, the ALJ found that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. (Tr. 97). Second, the ALJ considered Plaintiff's testimony that he had worked over the past summer, and that he enjoyed listening to music, hanging out with friends, and playing basketball. (Tr. 91). The ALJ also considered the fact that claimant had taken regular classes despite his alleged impairments and had testified to only mild limitations in social functioning and life experiences. (Tr. 92). In light of these statements, the ALJ found that Plaintiff's

statements "concerning the intensity, persistence, and limiting effects of his symptoms" were "not entirely credible." (Tr. 97).

"'It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant.'" *Aponte v. Sec'y, Dep't Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982)). "The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period." *F.S. v. Astrue*, No. 10-cv-444, 2012 WL 514944, at *20 (N.D.N.Y. Feb. 15, 2012). If the ALJ does find that a claimant's testimony is not credible, then the ALJ's determination must "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988). It appears that the ALJ properly considered Plaintiff's statements in light of the required factors and made a determination that Plaintiff's testimony was not entirely credible in light of the evidence. (Tr. 97-98). Further, as required, the ALJ specifically noted the evidence reviewed to support that finding. (*Id.*). Accordingly, the Court finds that the ALJ did not commit a legal error in evaluating Plaintiff's credibility.

### 2.   The ALJ's credibility analysis as to Ms. Matthew's testimony is supported by substantial evidence.

Plaintiff argues that the ALJ was required to consider Ms. Matthews' testimony as lay witness testimony, and that the ALJ's decision did not contain specific reasons for the weight she gave to Ms. Matthews' testimony. (Dkt. 8 at 10; Dkt. 10 at 2-3); *see also*

*Brownell*, 2009 WL 5214948, at *3 ("[A] lay witness' testimony is evidence in a disability determination proceeding and the ALJ must consider it."). "As a fact-finder, an ALJ is free to accept or reject the testimony of a parent." *F.S. v. Astrue*, 2012 WL 514944, at *19 (citing *Williams*, 859 F.2d at 260). It is evident from the text of the ALJ's decision that she at least considered the lay witness testimony of Ms. Matthews. However, a finding that any witness, including Ms. Matthews, is not credible must be set forth with specificity to allow for proper review of the record. *Id.*

Here, the ALJ referred to Ms. Matthews' testimony in three sections of the decision. (Tr. 90, 91, 94). First, the ALJ noted that Ms. Matthews had testified that Plaintiff might have ADHD or a mood disorder. (Tr. 90). The ALJ stated that the record did not include any medical diagnosis for ADHD or any mood disorders, so Ms. Matthews' testimony was disregarded. (*Id.*).[2] Second, the ALJ recognized that Ms. Matthews had testified that Plaintiff had behavioral problems and was disrespectful at home. (Tr. 91). The ALJ does not specifically address the weight that she did or did not give to this testimony. (*Id.*). Third, within her consideration of the domain of interacting and relating with others, the ALJ addressed Ms. Matthews' testimony that Plaintiff had anger management problems and had been suspended from school for his behavior.

---

[2]   The June 14, 2006 treatment note from Westside Health Services stated "Psych. ADD . . . will discuss w/ PCP re: Ritalin . . . Cont [sic] FLU psychologist/refer to Psychiatry. . . ." (Tr. 256). The note indicated that Plaintiff "was seeing" a psychologist once per week. (*Id.*). As a result, although this note indicated that Plaintiff may have ADD and set a plan to refer Plaintiff to a psychologist to discuss a Ritalin prescription, the note did not clearly state that Plaintiff was diagnosed with ADD. (*Id.*).

(Tr. 94). The ALJ discredited this testimony because Ms. Brunetto described Plaintiff as cooperative and friendly. (*Id.*).

Although the ALJ did not expressly state the weight she did or did not give to Ms. Matthews' testimony (e.g. "little weight" or "great weight"), the ALJ did discuss the testimony in such a way as to make it clear to a reviewer of the decision that she discredited Ms. Matthews' opinion. When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Monguer*, 722 F.2d at 1040 (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Even if the ALJ did consider Ms. Matthews' testimony to have great weight, this consideration would not impact the ultimate outcome of the finding of no disability because there was no clinical evidence in the record to support a finding of disability. Statements alone cannot be conclusive evidence of disability; instead, "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b).

Therefore, any error in failing to assign a specific weight to Ms. Matthew's opinion is a harmless error. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the

same conclusion, there is no need to require agency consideration.") (internal quotation omitted).   The ALJ's credibility determination as to Ms. Matthew's testimony is supported by substantial evidence and does not warrant remand.

> **D.   The ALJ's determination that Plaintiff's impairments do not functionally equal a listed impairment is supported by substantial evidence.**

The ALJ determined that Plaintiff has a marked limitation in acquiring and using information, but found no additional "marked" or "extreme" limitation to find Plaintiff disabled through a functional equivalent analysis. (Tr. 96).  Plaintiff argues that the ALJ should have concluded that Plaintiff had a marked limitation in the domain of interacting and relating with others.  (Dkt. 8 at 10-11).

When considering a child's limitations in the domain of interacting and relating with others, the Commissioner weighs a claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

Here, considering the evidence as a whole, there is substantial evidence supporting the ALJ's determination that Plaintiff did not suffer from an inability to appropriately interact with others such that he would have a marked limitation in the domain.  Despite Ms. Matthews' description of impairments, there was no substantial medical evidence from the relevant time period to support her statement, making her testimony less credible.  *See Lanzo ex rel. J.I.C. v. Astrue*, No. 10-cv-271S, 2012 WL 838921, at *6 (W.D.N.Y. Mar. 11, 2010) (finding mother's testimony not credible where there was no

clinical evidence to support her statements). The ALJ is not required to "reconcile every conflicting shred of medical testimony." *Falcon*, 88 F. Supp. 2d at 90-91 (citing *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). "This Court must afford the Commissioner's determination considerable deference, and will not substitute 'its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Lanzo*, 2012 WL 838921, at *1 (citing *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)) (alteration in original).

As the Commissioner notes, during medical examinations, Plaintiff had a positive affect and provided thoughtful responses to conversation. (Tr. 215-19). Ms. Brunetto opined that Plaintiff had a good prognosis, despite a moderate to severe expressive language delay. (Tr. 91, 215-19). Plaintiff was in regular education classes. (Tr. 215). Plaintiff testified that he enjoyed listening to music, was able to drive, and enjoyed spending time with friends in the neighborhood. (Tr. 73-74). Plaintiff was able to perform two summer jobs and volunteer work. (Tr. 63, 73).

There is also evidence in the record that is not cited in the ALJ's decision which provides support for the finding that Plaintiff had a less than marked limitation in the domain of interacting and relating with others. An ALJ's failure to cite specific evidence in her opinion does not indicate that the evidence was not considered. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

The record shows that medical consultants Weir and Gauthier opined that Plaintiff had a less than marked limitation in the domain of interacting and relating with others.

(Tr. 230).  In addition, on May 17, 2007, Plaintiff was assessed as a healthy 14-year old.  (Tr. 258).  On July 15, 2008, Plaintiff was assessed as a healthy 15-year old male with "normal growth and development."  (Tr. 260).  In light of the above facts, there was substantial evidence to support a finding that Plaintiff had a less than marked limitation in the domain of interacting and relating with others.  As a result, the Court concludes that the ALJ did not make an error in determining that Plaintiff's impairments did not functionally equal a listed impairment.

### E.     The ALJ appropriately relied on VE testimony.

At step five of the sequential analysis for determining whether or not an adult is disabled, the burden shifts to the Commissioner to demonstrate that there are a substantial number of jobs available in the national economy for Plaintiff to perform.  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).  The Commissioner will utilize the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).  However, "if a claimant has nonexertional impairments which 'significantly limit the range of work permitted by his exertional limitations,' then the Commissioner cannot rely upon the grids, and instead 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform.'"  *Griffith v. Astrue*, No. 08-cv-6004 (CJS), 2009 WL 909630, at *4 (W.D.N.Y. Mar. 31, 2009) (citing *Pratts*, 94 F.3d at 39).  A VE may be consulted to provide evidence concerning the existence of jobs in the national economy that a claimant with particular functional limitations could perform.  20 C.F.R. § 416.966(e).

- 22 -

Plaintiff contends that the ALJ erred in relying on the VE testimony because the hypotheticals posed to the VE were created with an RFC that Plaintiff claims were not supported by substantial evidence in the record.   (Dkt. 8 at 11-12).   As discussed, the ALJ did not commit legal error in conducting her analysis of Plaintiff's disability claim, and therefore her RFC determination and hypothetical questions were supported by substantial evidence.   As a result, Plaintiff's contentions concerning the ALJ's reliance on the VE's testimony are misplaced.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied.  Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      May 19, 2014
            Rochester, New York